UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------X
STEPHANIE LEWIS
                    Plaintiff,


            -against-                                    **Index Nos.**    **CV-04-4237**
                                                                           **CV-04-2331**
                                                         **(SLT) (ASC) (MDG)**

NEW YORK CITY TRANSIT AUTHORITY,
RICHARD DICCIARELLO, RICHARD
HERMAN, STEVE LOPIANO, TOMMY
DAVIS, BENNY PEPPERINO, BONNIE                           **REPLY MEMORANDUM**
BELLAMAY, CHARLES GLASGOW, BRIDGET                      **OF LAW IN RESPONSE**
COOPER MATHIS, AND ELIZABETH CURREY                     **TO DEFENDANTS'**
                                                         **OPPOSITION TO**
                    Defendants                           **PLAINTIFF'S MOTION**
                                                         **FOR LEAVE TO AMEND THE**
                                                         **COMPLAINT**

--------------------------------------------------------------X


**PLAINTIFF'S REPLY MEMORANDUM OF LAW IN RESPONSE TO DEFENDANTS'**
**OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO AMEND THE**
**COMPLAINT**

**PRELIMINARY STATEMENT**

Plaintiff Stephanie Lewis submits this memorandum of law in response to Defendants'

opposition to Plaintiffs' Motion for Leave to file an Amended Complaint. Defendants accept

Plaintiff's proposed amendments but challenge the addition of the four individual Defendants.

All of the individually named Defendants are employed by the Defendant Transit

Authority. The proposed allegations, when held in a light most favorable to the Plaintiff, state a

claim for which relief can be granted. The allegations put Defendants on notice of the charges

against them.

In that respect, Plaintiff's Motion for Leave to amend should be granted in its entirety.

## ARGUMENT

## THE PROPOSED AMENDMENTS TO PLAINTIFF'S FIRST AMENDED COMPLAINT WILL SURVIVE A MOTION TO DISMISS

### A. Plaintiff's proposed amendments are meritorious.

Plaintiff filed a Motion for Leave to amend the Complaint.[1] In the supporting memorandum of law, Plaintiff established that the proposed amendments are not unduly prejudicial, untimely, or frivolous. Defendants have not refuted this point.[2] Defendants contend instead that it is "plaintiff's attempt to add four Transit employees as defendants" that is improper because the allegations against them do not support a cause of action.[3]

### B. The proposed amendments state sufficient factual allegations to survive a Motion to Dismiss pursuant to the liberal requirements of the Federal Rules.

The standard under Fed. R. Civ. P. 15 for amending a pleading is a lenient one. See Parker v. Columbia Pictures Indus., 204 F.3d 326, 340 (2d Cir. 2000). Courts should not dismiss the complaint unless it is beyond a reasonable doubt that there are no facts to support relief. Ricciuti v. N.Y.C. Transit Authority, 941 F.2d 119, 123 (2d Cir. 1991) (citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957) (holding that the Court should not dismiss complaint for failure to state claim unless no facts support relief)).

Fed. R. Civ. P. 8 provides the basic requirements for pleadings in all federal civil actions. See Swierkiewics v. Sorema N.A., 534 U.S. 506, 513 (2002). Under Fed. R. Civ. P. 8, a claimant does not have to set out in detail the facts on which the claim for relief is based, but must provide only a statement sufficient to put the opposing party on notice of the claim. See Kittay v.

---

[1] Ms. Lewis has brought it to Plaintiff's Counsel's attention that she provided us with the wrong spelling of the name of one of the newly added Defendants. The name "Bonnie Blarnie" should actually be "Bonnie Bellamay." See First Am. Compl. attached hereto as Exh. 1. The attached First Am. Compl. remains exactly the same, except that Plaintiff's Counsel corrected the misspelling of Bonnie Bellamay's name.

[2] See Def.'s Mem. Opp. Am. Compl. at 1 ("...the authority does not challenge Lewis' motion insofar as it seeks to add a cause of action based upon her view of certain events that have occurred since June 2004....").

[3] Id. at 1-2.

Kornstein, 230 F.3d 531, 541 (2d Cir. 2000) (holding that a plaintiff need only disclose sufficient information to permit the defendant to have fair understanding of what plaintiff is complaining about).

Plaintiffs are not required to paint a full picture of Defendants' liability. Often Plaintiffs themselves have only a partial picture of what happened. A complete picture is only available after discovery has been completed. Therefore, and pursuant to the Federal Court's policy of liberal pleading standards, all that is required to meet the low thresholds set out Rules 8 and 15 to establish a claim, is that Defendants be given "fair notice" to enable them to answer. Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988).

### C.  The liberal standards of Fed. R. Civ. P. 8 and 15 have most assuredly been met by the allegations set forth in Plaintiff's First Amended Complaint.

Plaintiff has not only met the threshold requirements of Rules 8 and 15, she has exceeded them. The First Amended Complaint puts forth facts, in detail, describing the events that have transpired subsequent to the June 2004 Complaint. These events have resulted in the wrongful discharge of Plaintiff. Ms. Bellamay, Mr. Glasgow, Ms. Cooper Mathis and Ms. Currey were added as Defendants because of the role that they played in this newly added discriminatory discharge claim.

Plaintiff asserts employment discrimination claims under theories of Disparate Treatment, Disparate Impact, Retaliation, Discriminatory Discharge, Denial of Equal Protection Clause, Violation of First Amendment, and Failure to Accommodate. Except for the Disparate Impact claim,[4] to make out a prima facie case under all of the causes of action requires a showing of 1) an intentional act, and 2) motivated by discriminatory intent, which resulted in

---

[4] See Griggs v. Duke Power Co., 401 U.S. 424, 430-32 (1971) (liability may be found absent a showing of discriminatory intent).

Plaintiff's injury.[5]  Plaintiff may demonstrate the Defendant's discriminatory intent by either direct or circumstantial evidence.  See Goetz v. Farm Credit Serv., 927 F.2d 398, 400 (8th Cir. 1991), see also Parker v. Baltimore & Ohio R.R, 652 F.2d 1012, 1017-18 (D.C. Cir. 1981) (plaintiff is not required to adduce direct evidence of discrimination to establish a prima facie case).

The undisputed facts are clear. On April 29, 2005 Ms. Bellamay, Mr. Glasgow, Ms. Cooper Mathis approached Plaintiff to question her about the Defendants' uniform policy.[6] Upon Plaintiffs' refusal to meet with them without her lawyer, they made the conscious decision to send Plaintiff home.[7] Moreover they asked her not to return to work.[8] A letter, dated the same day, was then sent to Plaintiff rescinding her employment as a station agent.[9]

Plaintiff suffered serious injuries after being transferred against her wishes to work in the depot yard.[10] Due to these injuries, the only position within the TA for which she was physically qualified was station agent. In other words, if Plaintiff could not work as a station agent, it would be physically impossible for her to be a productive TA employee. The April 29, 2005 recession of her station agent position therefore left Plaintiff with no viable means of going back to active employment duty. It was due to this rescission that Plaintiff was discharged from the TA approximately a month and a half later.

---

[5] See McDonnell Douglas v. Green, 411 U.S. 792, 802-04 (1973) (stating the elements of disparate treatment), see Hazel v. U.S. Postmaster General, 7 F.3d 1, 3 (1st Cir. 1993) (stating the elements of retaliation), see Shapolia v. Los Alamos Nat'l Lab., 992 F.2d 1033, 1038 (10th Cir. 1993) (stating the elements of discriminatory discharge), see Polson v. Davis, 895 F.2d 705, 710-11 (10th Cir. 1990) (stating elements of a cause of action under the Equal Protection Clause), see Jeffries v. Harleston, 52 F.3d 9, 13 (2d Cir. 1995) (stating what is required for a cause of action under the First Amendment), see Anderson v. General Dynamics Convair Aerospace Div., 589 F.2d 397, 401 (9th Cir. 1978) (stating the elements of a failure to accommodate claim).
[6] First Am. Compl., attached as Exh. 1, at ¶ 70.
[7] Id. at ¶ 71.
[8] Id.
[9] Id. at ¶ 72.
[10] Id. at ¶ 60. Plaintiff is not seeking remedies for the physical injuries that she sustained on October 27, 2003, while working at the depot.

4

But for the Ms. Bellamay's, Mr. Glasgow's, and Ms. Cooper Mathis' attempts to meet with Plaintiff to impose a uniform policy on her that clearly violates her deeply held religious beliefs,[11] Plaintiff's station agent position would not have been rescinded. Had Plaintiff's station agent position not been rescinded, Defendants would have had no reason to discharge Plaintiff. The discharge was thus a foreseeable consequence of the rescission, which was set into motion by the three aforementioned Defendants. Therefore Ms. Bellamay, Mr. Glasgow, and Ms. Cooper Mathis were proximate causes of Plaintiff's discharge.

Ms. Currey was also a proximate cause of Plaintiff's discharge. Ms. Currey, a TA General Superintendent, used her authority to sign off on the letter that formally discharged the Plaintiff.[12] Had Ms. Currey not sent the letter, Plaintiff would not have been discharged. The discharge was obviously a foreseeable consequence of Ms. Currey's letter.

This Court should also infer, pursuant to the liberal standards of Rules 8 and 15, Defendants' discriminatory intent. The four newly added Defendants all knew before taking part in Plaintiff's rescission and termination that she was in litigation for the very reason for which they were harassing her. Plaintiff plainly told Ms. Bellamay, Mr. Glasgow, and Ms. Cooper Mathis the reason that she refused to discuss issues regarding her uniform. As for Ms. Currey, she had numerous correspondences with Plaintiff over the past two years on issues directly related to Plaintiff's employment relationship with the MTA.[13] These numerous correspondences reasonably put Ms. Currey on notice of the details related to the current action. Ms. Currey should have known that it would be prejudicial to Plaintiff's fundamental rights to terminate her on the issue that goes to the very heart of the lawsuit.

---

[11] Plaintiffs' actions also violated a Protective Order issued on November 12, 2004 by Judge Chrein forbidding Defendants from contacting Plaintiff directly to discuss with her issues related to TA uniform policy.
[12] Id. at 73.
[13] See series of letters addressed to Stephanie Lewis from Elizabeth Currey, attached hereto as Exh. 2.

5

As with the initial causes of action, the First Amended Complaint alleges sufficient facts that are to be inferred in Plaintiff's favor. Pursuant to the liberal standards of Rules 8 and 15, Plaintiff is entitled to have taken as true all reasonable factual allegations contained in her Complaint. See Terrorist Attacks II, 2005 WL 2296673, at *18 (S.D.N.Y. 2005) (holding that a court must construe the complaint in a light most favorable to the plaintiff, and must accept as true all allegations and all reasonable factual inferences drawn from the well-pleaded factual allegations.). When taken as true the facts alleged have properly put the Defendants on notice, and given them a fair understanding of the events in question.

### D.  Individual Defendants can be found liable under the Human Rights Law ("HRL") and Administrative Code claims.

The Defendants contend that the parties are not "an employer" within the meaning of the HRL because they have no ownership interest in the TA.[14] However, employees "may be subject to an employment discrimination suit under the Human Rights Law if [the employee] has the authority to do more than carry out personnel decisions made by others." Samide v. Roman Catholic Diocese of Brooklyn, 194 Misc.2d 561, 568-569, 754 N.Y.S.2d 164,172 (N.Y. Sup. Ct., 2003). See also Wideberg v. Tiffany & Co., L 454053, *2-4 (N.Y. Sup. Ct., 1992). See also Chumblee v. Harris & Harris, Inc., 154 F. Supp. 2d 670, 676-77 (S.D.N.Y. 1993) ("if employee has sufficient authority and power to do more than simply carry out personnel decisions made by others, he can be held liable under the HRL").

The four newly added Defendants all hold supervisory posts within the TA, with Ms. Currey holding a position of General Superintendent. Therefore it is reasonable to believe that these Defendants have authority to do more than simply carry out decisions made by others. This is an issue that can only be clarified through discovery.

---

[14] See Def.'s Mem. Opp. Am. Compl. at 7.

Moreover, section 296(6) of the HRL states that it shall be an unlawful discriminatory practice "for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or attempt to do so." N.Y. Exec. Law § 296(6). Based on this language, several courts have held that a Defendant who actually participates in the conduct giving rise to a discrimination claim may be held personally liable under the HRL. See Tomka v. Seiler Corp., 66 F.3d 1295, 1317 (2d Cir. 1995), see also Persaud v. S. Axelrod Co., 1996 WL 11197, at *3 (S.D.N.Y. Jan, 10, 1996) (holding that Plaintiff may maintain claims against individual Defendants for violations of New York HRL if individual Defendant participated in the conduct giving rise to the discrimination claim).

The newly added Defendants are not only alleged to have participated in the conduct giving rise to Plaintiff's wrongful termination claim, they are alleged to have been proximate causes of that claim. It is therefore reasonable to presume, at least prior to discovery, that the four newly named Defendants fall within the purview of the HRL and Administrative Code.

### E.  Individual Defendants do not qualify under the qualified immunity exception.

Defendants contend that the newly added Defendants are protected from suit under §1983 due to qualified immunity. Plaintiffs cite Cassidy v. Scopetta, 365 F. Supp. 2d 283, 294 (E.D.N.Y. 2005) in support of this proposition. Defendants' application of the immunity exception however is misplaced. The Cassidy precedent stands for the proposition that a court will interfere only "where employees of the state have challenged personnel decisions." Id.  In Cassidy, Plaintiffs' allegations rose to the level of a challenge of personnel decisions rather than a violation of fundamental rights. Id.

The allegations brought by Plaintiff in the present action however go further than merely suggesting that Defendants' policy is a "bad idea." Id. Plaintiff's allegations demonstrate that she

7

is the victim of a fundamental rights violation. Id. (while "allegations may suggest that the FDNY's policy is a bad idea, none support the conclusion that Defendants have violated Plaintiffs' fundamental rights").

In a § 1983 action, "it is well-settled that qualified immunity shields a defendant from personal liability for damages so long as his conduct did not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Id. at 295 (internal citations omitted) (emphasis added). The allegations contained in the First Amended Complaint clearly demonstrate that Defendants violated Plaintiff's established federally protected rights. Knowing that Plaintiff held religious beliefs regarding her Khimar, and on notice of the fact that Plaintiff was in litigation regarding that very issue, Defendants nonetheless contributed to the rescission and discharge from the only position for which Plaintiff was qualified. Id. (employee entitled to qualified immunity only "where it was objectively reasonable to believe that her acts did not violate clearly established federally protected rights."). Holding the evidence in a light most favorable to the Plaintiff, a rational jury could certainly conclude that Defendants behaved in an unreasonable manner, and in a fashion that violated Plaintiff's fundamental rights. See Halperin v. Kissinger, 807 F.2d 180, 189 (D.C. Cir. 1986).

### F. **Proper service has been effectuated in this case.**

All of the above captioned Defendants have been properly served through their business address. The Defendants New York City Transit Authority, Richard Dicciardello, Richard Hermann, Steve LoPiano, Thomas Davis, and Benjamin Pecorino waived their objection to service and appeared in this action on October 26, 2004 when they filed their answer.

The issue of improper service will be taken up at a later time should Defendants choose to raise it in a properly briefed motion, which includes supporting points of authority. Plaintiff

8

will also consider a Default Judgment application if Defendants move for a Motion to Dismiss based on defective service.

## CONCLUSION

Plaintiff has alleged, with factual support, that the newly added Defendants intentionally and proximately caused Plaintiff's wrongful discharge. For the foregoing reasons, and despite Defendants' personal opinion that it is "plainly unreasonable" to hold the individuals liable,[15] the Court should find that Plaintiff's claims are based on well pleaded allegations and all Defendants in the original and amended complaint are legitimate parties in this lawsuit.

Dated: October 24, 2005

/s/
_____
Omar T. Mohammedi (OTM7234)
On behalf of Plaintiff Stephanie Lewis
Law Firm of Omar T. Mohammedi, LLC
200 Madison Avenue, Suite 1901
New York, NY 10016
(212) 725-3846

---

[15] See Def.'s Mem. Opp. Am. Compl. at 9.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
STEPHANIE LÉWIS
                Plaintiff,

           -against-                          **Index Nos.**
                                              **CV-04-4237**
                                            **CV-04-2331**
                                          **(SLT) (ASC) (MDG)**

**NEW YORK CITY TRANSIT
AUTHORITY, RICHARD DICCIARELLO
RICHARD HERMAN, STEVE LOPIANO,**        **AFFIDAVIT IN**
**TOMMY DAVIS, BENNY PEPPERINO,**        **SUPPORT OF REPLY**
**BONNIE BELLAMAY, CHARLES GLASGOW,**  **MEMORANDUM OF**
**BRIDGET COOPER MATHIS, ELIZABETH**    **LAW**
**CURREY**
                Defendants
-------------------------------------------------------------X

## AFFIDAVIT OF OMAR T. MOHAMMEDI, ESQ.

1. I, Omar T. Mohammedi, an attorney admitted to practice before this court. On behalf of Plaintiff Stephanie Lewis I made an application for leave to amend the complaint on September 26, 2005. I now submit this Affidavit in response to Defendants' opposition. I declare to the best of my knowledge that the facts surrounding this application are true under penalty of perjury.

2. On behalf of Plaintiff I have sought to add a cause of action as a result of Defendants' recent unlawful discharge of Plaintiff. The previously filed Memorandum of Law, the Motion and the Proposed Amended Complaint detail the incidents surrounding the discharge.

3. I have also sought to add four Defendants who knowingly contributed to Defendants' unlawful discharge of the Plaintiff. These newly added Defendants

are Charles Glasgow, Bridget Cooper Mathis, Elizabeth Currey, and Bonnie Bellamay.

4. Ms. Lewis has brought it to my attention that she provided us with the wrong spelling of the name of one of the newly added Defendants. The name "Bonnie Blarnie" should actually be "Bonnie Bellamay."

5. Plaintiffs' Counsel has since corrected the misspelling of Bonnie Bellamay's name. These were the only changes made to the First Amended Complaint.[1]

6. All of the above captioned Defendants have been properly served. The Defendants New York City Transit Authority, Richard Dicciardello, Richard Hermann, Steve LoPiano, Thomas Davis, and Benjamin Pecorino all appeared in this action on October 26, 2004 when they filed their answer.

7. The issue of improper service will be taken up at a later time should Defendants choose to raise the issue in a properly briefed Motion, which includes supporting points of authority. Plaintiff will also consider an application for Default Judgment if Defendants move forward with the Motion to Dismiss.

8. Plaintiff is a victim of employment discrimination pursuant to the various causes of action contained in the First Amended Complaint. Plaintiff seeks redress and relief for injuries that she suffered as a result of Defendants' violation of her fundamental rights.

This Affidavit was executed on October 24, 2005, New York, New York.

---

[1] A copy of the First Amended Complaint is attached hereto as Exh. 1.

2

_____/s/_____
Omar T. Mohammedi (OTM7234)
On behalf of Plaintiff Stephanie Lewis
Law Firm of Omar T. Mohammedi, LLC
200 Madison Avenue, Suite 1901
New York, NY 10016
(212) 725-3846

## CERTIFICATE OF SERVICE

I, ALLY HACK,  Esq. do hereby certify that I served the within Memorandum of Law in

Support of the Stephanie Lewis' Response to Defendants' Opposition to Plaintiff's

Motion for Leave to File an Amended Complaint on this date, on all parties in the case

via filing with the Court's Electronic Case Filing (ECF) system.


Dated: October 24, 2005


ALLY HACK, ESQ.

# EXHIBIT 1

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------**X**
**STEPHANIE LEWIS**

                Plaintiff,

                                     FIRST AMENDED
                                     COMPLAINT

                                     Jury Trial Demanded

         -against-                     **Index Nos.  CV-04-2331**
                                                    **CV-04-4237**
                                       **(SLT) (ASC) (MDG)**

**NEW YORK CITY TRANSIT**
**AUTHORITY, RICHARD DICCIARELLO**
**RICHARD HERMAN, STEVE LOPIANO,**
**TOMMY DAVIS, BENNY PEPPERINO,**
**BONNIE BELLAMAY, CHARLES GLASGOW,**
**BRIDGET COOPER MATHIS, AND ELIZABETH**
**CURREY**

                Defendants
-------------------------------------------------------------**X**

Plaintiff STEPAHINE LEWIS, by and through the undersigned attorneys, alleges as follows:

## NATURE OF ACTION

1.     Plaintiff brings this action to remedy:

(A)     Discrimination on the basis of religion and gender in the terms, conditions and privileges of employment in violation of: (a) the Title VII of the Civil Right Act of 1964, as amended, 42 U.S.C. §§ 2000 et seq.; (b) New York Executive Law § 292(1), § 296 (10)(a), (c); New York City Administrative Code § 8-107(1).

(B)     Failure to Accommodate religious beliefs under the terms, conditions and privileges of employment in violation of: § 701 (j) of Title VII of the Civil Rights

Act, as amended at 42 U.S.C. § 2000e(j), New York Executive Law § 296(10)(b), City HRL § 8-107(3).

(C)     Disparate Treatment under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C §§ 2000 et seq.; The New York Executive Law, and the New York City Administrative Code.

(D)     Disparate Impact under § 703(k) of Title VII of the Civil Rights Act of 1991, as amended, 42 U.S.C. § 2000e-2(k); the City HRL § 8-107(17).

(E)     Conspiracy to Discriminate based on plaintiff's religion and gender under the New York Executive Law § 296(6).

(F)      Retaliation against an employee for having complained of discrimination in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-3(a), New York Executive Law § 296(7), and the City Administrative Code § 8-107(7), (19).

(G)      Deprivation of rights guaranteed by 42 U.S.C. § 1983, the First and Fourteenth Amendments to the United States Constitution, and Article 1, section 8 and 11 of the New York State Constitution. Plaintiff seeks both declaratory relief and monetary damages.

(H)     Unlawful discharge with malice or reckless indifference to the federally protected rights of the plaintiff based on her religious beliefs practices and gender pursuant to 42 U.S.C. §§ 2000e-1(a)(1), New York Executive Law § 296(1), and New York City Administrative Code § 8-107(1).

## **JURISDICTION AND VENUE**

2.   This Court has jurisdiction over plaintiff's Title VII claims under 42 U.S.C. §
2000e-5(f)(3), 28 U.S.C. §§ 1331, 1343(a)(3) and (a)(4).

3.   This Court has supplemental jurisdiction over plaintiff's state law claims under 28
U.S.C. § 1367(a), since plaintiff's federal and state law claims arise from a
common nucleus of operative facts and are so intertwined as to make the
existence of supplemental jurisdiction over the state law claims appropriate.

4.   Plaintiff has complied with the prerequisite to jurisdiction under Title VII. On
February 4, 2003, plaintiff filed a timely charge with the Equal Employment
Opportunity Commission ("EEOC") alleging that the NYC Transit Authority
("TA") discriminated against her based on religion, religious beliefs and gender
and failed to accommodate her religious beliefs.

5.   Plaintiff states that On February 12, 2003, the TA took adverse action against her
by not allowing her to drive the passenger bus, relegating her to other job duties at
the Flatbush Depot ("Depot"), rescinding her reassignment, and finally unlawfully
terminating her.

6.   On March 4, 2004, the EEOC issued plaintiff a Right-to-Sue letter in the Federal
Court on the above charges. The letter was mailed on March 7th and received by
our office on March 10, 2004.

7.   In its letter, however, the EEOC confused the date of TA' s adverse action against
plaintiff, February 12, 2003, with the date of her return from her disability leave,
February 6, 2003. Thereby, concluding that the federal charge was not filed
timely.

3

8.     On March 12, 2004, our office sent a letter to correct the EEOC's confusion as to the date of the adverse action and discrimination and that of the plaintiff's return from her disability leave.

9.     Plaintiff complied with the requirements of N.Y.C. Admin. Code § 8-502(C). A copy of the complaint has been served on the New York City Commission on Human Rights and the New York City Corporation Counsel.

10.    Venue is proper in the Eastern District of New York under 28 U.S.C. § 1391 (b) in that the plaintiff resides in Brooklyn.

## PARTIES

11.    Plaintiff, Stephanie Lewis resides at 947 Montgomery Street, Apt. #5, Brooklyn, NY. Plaintiff is a female and a Muslim-American. She has been employed by the TA as a Bus Operator since March of 1989.

12.    The defendant TA is a municipal corporation duly organized and existing under the laws of the State of New York. At all times material to this action, the TA was the plaintiff's "employer" within the meaning of Section 701(f) of Title VII (42 U.S.C. § 2000e(f), Section 292(1) of the State HRL, and Section 8-102(1) of the City HRL. The City is also a "person" within the meaning of 42 U.S.C. § 1983 and the Fourteenth Amendment of the United States Constitution.

13.    Richard Dicciardello is the General Superintendent within the TA.  He is responsible for following employment directives and policies, including religious accommodation of religious beliefs and equality between male and female employees. He is also responsible for ensuring that the TA does not deprive any

4

individual of rights secured by federal or state law.  He is also responsible for hiring, screening, training, retention, supervision, discipline and counseling at the TA. Defendant Richard Dicciardello knew or should have known of the discriminatory customs, practices, policies, and wrongful acts described in the complaint but nonetheless, condoned, ratified, and/or authorized such conduct. He is being sued in his official and individual capacities.

14.   Richard Herman is the Dispatcher within the TA. He is responsible for implementing employment policies and operations. He participated in various TA decisions to deny plaintiff's employment, educational and training opportunities. He is being sued in his official and individual capacities.

15.   Benny Pepperino is the Dispatcher at the Depot.  He participated in various TA decisions to deny plaintiff's employment, educational and training opportunities. He retaliated against plaintiff for speaking out against her discrimination. He is being sued in his official and individual capacities.

16.   Tommy Davis is the Dispatcher at the Depot. He participated in various TA decisions to deny plaintiff's employment, educational and training opportunities. He exposed plaintiff to daily harassment and hostile environment and retaliation. He is being sued in his official and individual capacities.

17.   Steve Lopiano is the Assistant General Manager at the Depot.  He participated in various TA decisions to deny plaintiff's employment, educational and training opportunities. He exposed plaintiff to daily harassment and hostile work environment and retaliation. He is being sued in his official and individual capacities.

5

18.   Bonnie Bellamay, Charles Glasgow, and Bridget Cooper Mathis participated in various TA decisions to discharge plaintiff, and to deny plaintiff's employment, educational and training opportunities. They exposed plaintiff to harassment, hostile work environment and retaliation. They are being sued in their official and individual capacities.

19.   Elizabeth Currey is the General Superintendent with the TA. She participated in various TA decisions to discharge plaintiff, and to deny plaintiff's employment, educational and training opportunities. She is being sued in her official and individual capacities.

20.   At all times material to this action, defendants have acted under color or custom or usage of law and continue to so act, depriving plaintiff of rights, privileges, and immunities secured to her by the constitution and laws of the United States and the State of New York, and in direct violation of the Civil Rights Act of 1871, 42 U.S.C. § 1983.

21.   Defendants individually and in their official capacities have individually and collectively attempted to coerce her to wear a uniform in violation of her religious beliefs and practices.

22.   Defendants individually and in their official capacities have individually and collectively discriminated, retaliated against and terminated plaintiff on the basis of religion and gender.

6

## FACTUAL ALLEGATIONS

23. Plaintiff is a female Muslim-American. As required by her Religion, Islam, she wears a scarf ("khimar") as her only head cover.

24. Plaintiff has been employed by Defendant since March 27, 1989. She held the title of Bus Operator, and more recently that of Station Agent.

25. Plaintiff has worked in those capacities during her 16 years of employment with the TA, the later title she held for less than one day. Her primary duties have been that of a Bus Operator. As such she has been responsible for driving a passenger TA bus. She has also been responsible for transporting passengers on a TA bus.

26. Since plaintiff commenced her employment with the TA, she has worn a khimar without any complaint or discipline.

27. During her tenure as a passenger Bus Operator, she was never reprimanded on her job performance or behavior.

28. During her 16 years of service as Bus Operator, plaintiff has received numerous positive work performance evaluations. She performed her duties as a Bus Operator with professionalism and courtesy. A substantial number of passengers have sent letters and/or commendations to defendants praising plaintiff on for her professionalism and courtesy.

29. In March 27, 2002, plaintiff went out on disability leave. She returned to work on February 6, 2003.

30. Upon her return, she was required to attend a course called 19-A Re-Certification.

7

31.   The course is mandatory for Bus Operators returning from a long leave of absence. While taking the course, the General Superintendent Richard Dicciardello in the presence of Union Chairperson Louretha Carter, supplied plaintiff with the TA hat and instructed her to wear it when she returned to work.

32.   Plaintiff passed all her Re-Certification tests and reported to work on February 11, 2003. While the plaintiff was operating the bus, Dispatcher Richard Herman boarded the bus and cited plaintiff for not wearing the TA hat.

33.   Plaintiff expressed her refusal to wear the TA hat over her "khimar" because it violated her religious beliefs.

34.   On February 12, 2003, Superintendent Richard Dicciardello, in the presence of the Union representatives, Louretha Carter and Vice Chairperson of the Flatbush Depot Carlos Clarke, informed plaintiff that because she refused to wear the TA hat she would be relieved of her duties as a Bus Operator.

35.   Plaintiff was assigned to duties at the Depot beginning February 12, 2003.

36.   Defendant disciplined plaintiff by relegating her to depot duties such as janitorial work, shifting buses within depots, transporting out of service buses to Tarrytown, NY, Zeerega Depot, Bronx, NY E.N.Y. Depot, Brooklyn, Lodi, NJ, Pensky, Bronx, NY.

37.   Plaintiff suggested that she make the "khimar" with the same material and color as the TA uniform with the logo on top. Defendants refused her request.

38.   Plaintiff complained about her discrimination to the media on February 26, 2003. As a result, defendants started harassing her and exposing her to hostile environment in retaliation.

8

39.     Dispatcher Tommy Davis required plaintiff to inform him whenever she steps out
        to the bathroom.

40.     On or about March 27, 2003, Dispatcher Tommy Davis yelled at plaintiff for
        going to the ladies room without informing him, while other employees were not
        obligated to make such a report.

41.     When plaintiff complained of such harassment to Louretha Carter, Ms. Carter
        merely asked plaintiff to go along and play the game.

42.     On or about April 3, 2003, Amin Khan, Vice President of the Transit Workers
        Union 100 ("TWU 100") told plaintiff that she was splitting up the depot and
        causing problem by not accepting the new duties which were being assigned to
        her.

43.     On or about April 3, 2003, plaintiff filed a grievance against defendant Steve
        Lopiano with Amin Khan for harassment, humiliation, retaliation and hostile
        environment.

44.     On or about April 3, 2003, Amin Khan stated to plaintiff that he was able to
        prevent the TA from discharging plaintiff as a result of her refusal to wear the TA
        hat over her khimar.

45.     On or about June 17, 2003, Superintendent Dicciardello advised plaintiff that she
        was taking away jobs from other employees at the depot by shifting buses within
        depot. Defendant Dicciardello wanted plaintiff to perform janitorial duties such as
        cleaning buses and depot.

46.     On or about July, 2003, plaintiff questioned Billy Pellitier, the division person for
        the TWU, as to why the male employees at the depot were authorized to choose

9

their duties, while plaintiff and the other Muslim women were not allowed to choose. Mr. Pellitier replied by saying that these men were taken out of the passenger Bus Operation (because of accidents) while plaintiff and the other Muslim women took themselves out of the passenger bus operation because they refused to compromise their religious beliefs.

47.  On or about August, 13, 2003, Dispatcher Benny Pepperino put plaintiff on hold for 15 minutes while she was calling for information and then hung up on her. When plaintiff insisted on speaking to him he got on the phone and started yelling at her.

48.  On or about October 10, 2003, plaintiff and the other Muslim women disciplined were ordered to sign in and out and had to report their lunch time or their brief leave to the ladies room while other employees at the depot did not have to comply with this procedure.

49.  On or about October 24, 2003, Dispatcher Benny Pepperino told plaintiff that she should work at Wendy's since they would not mind having her wearing that "rag on her head."

50.  During the relevant time period, the TA's dress code for Bus Operators stated that TA issued hats were "optional" and Bus Operators are not required to wear them while driving the passenger buses.

51.  Defendants failed to provide plaintiff with any written rule or regulation which prohibits her from wearing a khimar while driving the passenger bus.

52.  To date, defendants have not been able to articulate legitimate reasons for discriminating against plaintiff based on her religion and gender. Instead they are

10

continuing to discipline her and retaliate against her for complaining about her being discriminated against.

53.   Upon information and belief TA enforcement of its uniform policy is disparate and uneven, as many TA employees violate the express uniform regulations on a daily basis without being penalized.

54.   Upon information and belief all Muslim women Bus Operators were singled out because of their religion and gender. Muslim men were allowed to operate buses without wearing the TA hat over their "Kufi", a religious hat Muslim men wear.

55.   The three Muslim women Bus Operators including plaintiff have been singled out for the same discrimination and treatment.

56.   The TA treated the Muslim women Bus Operators with disparity by subjecting them to inferior treatment and exposing them to harsher consequences than the other Bus Operators because of their religion and gender.

57.   The defendants' decision to require the three Muslim women Bus Operators to wear the TA hat against their religious beliefs while allowing male Bus Operators to drive bus without wearing the hat has resulted in discrimination based on the plaintiff's gender and religion.

58.   The two other women filed their discriminatory complaint against the TA in the Eastern District of New York.

59.   At all times material to this action, the TA was plaintiff's "employer" within the meaning of section 701(f) of Title VII (42 U.S.C. § 2000e(f), Section 292(1) of the New York State Executive Law, and Section 8-102(1) of the New York City Administrative Code.

11

60.  On October 27, 2003, plaintiff suffered debilitating injuries that directly resulted from her being forced to work in the Depot yard. She fell backwards over a fare box hose, striking her head, elbow and back.

61.  Plaintiff was knocked unconscious and subsequently hospitalized.

62.  Consequently, plaintiff has been physically unable to perform the duties associated with being a Bus Operator and depot worker.

63.  On or about August 18, 2004, plaintiff was notified in a letter signed by Elizabeth Currey that she would be terminated due to a one year cumulative absence resulting from service connected illness/injury unless she accepted reclassification.

64.  On or about September 17, 2004, plaintiff participated in the reclassification process.

65.  Subsequently plaintiff completed a medical examination.

66.  On February 18, 2005, plaintiff was found medically qualified for a Station Agent position.

67.  On April 4, 2005 plaintiff enrolled in the mandatory Station Agent training course.

68.  On April 28, 2005 Plaintiff was certified for a Station Agent position.

69.  The TA officials imposed upon plaintiff a uniform policy that was neither discussed nor negotiated with her attorneys, or the TWU.

70.  On April 29, 2005, as plaintiff commenced her Station Agent shift, TA officials Bonnie Bellamay, Charles Glasgow and Bridget Cooper Mathis asked to meet with her without the presence of her attorney.

71.  The TA officials attempted to discuss with plaintiff the uniform issued to her. Upon plaintiff's refusal to discuss it without her attorney present, TA officials sent her home and asked her not to return to work.

72.  Thereafter on April 29, 2005 the TA sent plaintiff a letter rescinding her reassignment.

73.  On June 14, 2005, the TA issued to plaintiff a Notice of Termination signed by Elizabeth Currey wherein the TA terminated her employment.

74.  On July 14, 2005, Arbitrator Richard Adelman ruled that the TA's termination of plaintiff's employment was in violation of a previous order maintaining that plaintiff is to remain employed by the TA until her case is resolved.

75.  Arbitrator Adelman ruled further that the TA must either reinstate plaintiff to a Station Agent position, or return her to her prior position as a Bus Operator.

76.  It was not until August 8, 2005, over three weeks after Arbitrator Adelman issued his order, that the TA finally sent to Ms. Lewis a letter rescinding her termination.

77.  To date, in violation of the Arbitrator's decision Ms. Lewis has not been placed back on the employment schedule and has not worked any shifts since her termination. Plaintiff is still terminated.

78.  Upon information and belief the TA has allowed Muslim women Station Agents to work without hassle, while wearing khimars with no TA logo.

79.  Well over one month has passed since the August 8, 2005 reinstatement letter, with the TA having taken no substantive action to return plaintiff to her employment as a Station Agent or Bus Operator.

80.  All of plaintiff's medical and other benefits were cancelled in April 2005.

81.  Plaintiff has not received a paycheck since April 2005.

82.  As a result, plaintiff has been under much undue physical and mental stress due to her financial straits and worsening medical condition.

83.  Plaintiff has experienced great difficulty paying common bills and maintaining household expenses.

84.  Plaintiff's health is continually deteriorating as a result of defendants' latest adverse actions against her.

85.  Plaintiff cannot afford medicine necessary to her health and well-being, including medicine for her Diabetes.


## FIRST CLAIM FOR RELIEF

### (Employment Discrimination)

86.  Plaintiff repeats and realleges each and every allegation contained in paragraph 1 through paragraph 85 above with the same force and effect as if fully set forth herein.

87.  Defendants have discriminated against plaintiff in terms of conditions of her employment on the basis of her religion, and gender in violation of Section 703(a)(2) of Title VII (42U.S.C. § 2000e-2(a)(2)), Section 296 of the State HRL, and Section 8-107 of the City HRL.

88.  As a result of the defendants' wrongful actions complained of herein, plaintiff has suffered severe damages in the form of humiliation, embarrassment, emotional distress, physical injury, as well as money damages including but not limited to

14

regular wages, overtime wages, retirement benefits, insurance benefits and pension.

89.     All of these damages have been exacerbated by the latest events surrounding plaintiff's most recent discrimination, retaliation, hostile environment, disparate treatment and termination.

## SECOND CLAIM FOR RELIEF

### (Unlawful Discrimination and Demotion)

90.     Plaintiff repeats and realleges each and every allegation contained in paragraph 1 through paragraph 89 above with the same force and effect as if fully set forth herein.

91.     Defendants have unlawfully and intentionally demoted plaintiff based on her religion, gender and religious appearance in violation of 42 U.S.C. §§ 2000-1(a)(1), Section 296 (1) of the State HRL, and Section 8-107 of the City HRL.

92.     Defendants' discriminatory acts were motivated by religious animus and were performed with the intent to discriminate against plaintiff based on her religion and gender.

93.     As a result of the defendants' wrongful actions complained of herein, plaintiff has suffered severe damages in the form of humiliation, embarrassment, emotional distress, physical injury, as well as in money damages including but not limited to regular wages, overtime wages, retirement benefits, insurance benefits and pension.

15

94.   All of these damages have been exacerbated by the events surrounding plaintiff's most recent discrimination, retaliation, hostile environment, disparate treatment and termination.

### THIRD CLAIM FOR RELIEF

**(Failure to Accommodate Religious beliefs and practices)**

95.   Plaintiff repeats and realleges each and every allegation contained in paragraph 1 through paragraph 94 above with the same force and effect as if fully set forth herein.

96.   Defendant failed to offer religious accommodation to plaintiff in violation of Section 701(j) of Title VII (42 U.S.C. § 2000e(j)), Section 296 of the State HRL, and Section 8-107 of the City HRL.

97.   As a result of the defendants' wrongful actions complained of herein, plaintiff has suffered severe damages in the form of humiliation, embarrassment, emotional distress, physical injury, as well as money damages including but not limited to regular wages, overtime wages, retirement benefits, insurance benefits and pension.

98.   All of these damages have been exacerbated by the events surrounding plaintiff's most recent discrimination, retaliation, hostile environment, disparate treatment and termination.

## FOURTH CLAIM FOR RELIEF

### (Disparate Treatment)

99.   Plaintiff repeats and realleges each and every allegation contained in paragraph 1 through paragraph 98 above with the same force and effect as if fully set forth herein.

100.  Defendants have unlawfully treated plaintiff and other TA Muslim female employees less favorably because of their religion and gender pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000 *et seq*.; The New York Executive Law and the City Human Rights Law § 8-107(17).

101.  As a result of defendants' disparate treatment against plaintiff, she has been prevented from working as a passenger Bus Operator, as well as from improving and advancing her career.

102.  As a result of the defendants' wrongful actions complained of herein, plaintiff has suffered severe damages in the form of humiliation, embarrassment, emotional distress, physical injury, as well as money damages including but not limited to regular wages, overtime wages, retirement benefits, insurance benefits and pension.

103.  All of these damages have been exacerbated by the events surrounding plaintiff's most recent discrimination, retaliation, hostile environment, disparate treatment and termination.

17

## FIFTH CLAIM FOR RELIEF

### (Disparate Impact)

104.   Plaintiff repeats and realleges each and every allegation contained in paragraph 1 through paragraph 103 above with the same force and effect as if fully set forth herein.

105.   The defendants' wrongful employment practice has resulted in discrimination against plaintiff based on her religion and gender.

106.   Plaintiff was discriminated against because she is a woman and a Muslim in violation of Disparate Impact under § 703(k) of Title VII of the Civil Rights Act of 1991, as amended, 42 U.S.C. § 2000e-2(k) and the City HRL § 8-107(17).

107.   As a result of the defendants' wrongful actions complained of herein, plaintiff has suffered severe damages in the form of humiliation, embarrassment, emotional distress, physical injury, as well as money damages including but not limited to regular wages, overtime wages, retirement benefits, insurance benefits and pension.

108.   All of these damages have been exacerbated by the events surrounding plaintiff's most recent discrimination, retaliation, hostile environment, disparate treatment and termination.

## SIXTH CLAIM FOR RELIEF

### (Gender Discrimination)

109.   Plaintiff repeats and realleges each and every allegation contained in paragraph 1 through paragraph 108 above with the same force and effect as if fully set forth herein.

18

110.   Defendants' acts were motivated by gender animus and were exhibited with the intent to discriminate based on gender in violation of Title VII, 42 U.S.C. § 2000-2, The New York Executive Law § 296 *et seq*. and the City HRL § 8-107.

111.   Defendants disciplined plaintiff and prevented her from operating the passenger bus, while allowing male Bus Operators to drive passenger buses without having to wear the TA hat over their "Kufi."

112.   As a result of the defendants' wrongful actions complained of herein, plaintiff has suffered severe damages in the form of humiliation, embarrassment, emotional distress, physical injury, as well as money damages including but not limited to regular wages, overtime wages, retirement benefits, insurance benefits and pension.

113.   All of these damages have been exacerbated by the latest events surrounding plaintiff's most recent discrimination, retaliation, hostile environment, disparate treatment and termination.

## SEVENTH CLAIM FOR RELIEF

### (Retaliation)

114.   Plaintiff repeats and realleges each and every allegation contained in paragraph 1 through paragraph 113 above with the same force and effects as if fully set forth herein.

115.   Defendants have retaliated against plaintiff for having complained of religious discrimination in the terms and conditions of employment in violation of Section 704 of Title VII (42 U.S.C. § 2000e-3), Section 296 (7) of the State HRL, and Section 8-107(7) of the City HRL.

19

116.   As a result of the defendants' wrongful actions complained of herein, plaintiff has suffered severe damages in the form of humiliation, embarrassment, emotional distress, physical injury, as well as money damages including but not limited to regular wages, overtime wages, retirement benefits, insurance benefits and pension.

117.   All of these damages have been exacerbated by the latest events surrounding plaintiff's most recent discrimination, retaliation, hostile environment, disparate treatment and termination.

### EIGHTH CLAIM FOR RELIEF

### (Conspiracy to Discriminate)

118.    Plaintiff repeats and realleges each and every allegation contained in paragraph 1 through paragraph 117 above with the same force and effects as if fully set forth herein.

119.   Defendants, individually and collectively conspired to discriminate by aiding, abetting, inciting, compelling and coercing plaintiff, collectively and individually, to stop driving TA passenger buses based on religion and gender, and relegated her to depot duties in violation of the New York State Executive § 296(6). Defendants conspired to retaliate against plaintiff for speaking out against her discrimination.

120.   As a result of the defendants' wrongful actions complained of herein, plaintiff has suffered severe damages in the form of humiliation, embarrassment, emotional distress, physical injury, as well as money damages including but not limited to

20

regular wages, overtime wages, retirement benefits, insurance benefits and pension.

121.   All of these damages have been exacerbated by the latest events surrounding plaintiff's most recent discrimination, retaliation, hostile environment, disparate treatment and termination.

## NINTH CLAIM FOR RELIEF

### (Violation of First Amendment Right)

122.   Plaintiff repeats and realleges each and every allegation contained in paragraph 1 through paragraph 121 above with the same force and effect as if fully set forth herein.

123.   Defendants' individually and collectively acted with wanton and reckless disregard for plaintiff's civil rights, religious appearance and belief, under the First Amendment to the United States Constitution, and the New York State Constitution Article 1.

124.   As a result of the defendants' wrongful actions complained of herein, plaintiff has suffered severe damages in the form of humiliation, embarrassment, emotional distress, physical injury, as well as money damages including but not limited to regular wages, overtime wages, retirement benefits, insurance benefits and pension.

125.   All of these damages have been exacerbated by the latest events surrounding plaintiff's most recent discrimination, retaliation, hostile environment, disparate treatment and termination.

## TENTH CLAIM FOR RELIEF

### (Violation Freedom of Speech)

126.  Plaintiff repeats and realleges each and every allegation contained in paragraph 1 through  125 above with the same force and effect as if fully set forth herein.

127.  In retaliation against plaintiff for having spoken out on matters of public concern, defendant has abridged plaintiff's rights to freedom of speech under First Amendment to the United States Constitution, and Article 1, Section 8 of the New York State Constitution.

128.  As a result of the defendants' wrongful actions complained of herein, plaintiff has suffered severe damages in the form of humiliation, embarrassment, emotional distress, physical injury, as well as money damages including but not limited to regular wages, overtime wages, retirement benefits, insurance benefits and pension.

129.  All of these damages have been exacerbated by the latest events surrounding plaintiff's most recent discrimination, retaliation, hostile environment, disparate treatment and termination.

## ELEVENTH CLAIM FOR RELIEF

### (Denial of Equal Protection Clause)

130.  Plaintiff repeats and realleges each and every allegation contained in paragraph 1 through paragraph 129 above with the same force and effect as if fully set forth herein.

131.   Defendants have denied plaintiff equal protection of the laws because of her gender and religion, in violation of the Fourteenth Amendment to the United States Constitution and Article I, Section 11 of the New York State Constitution.

132.   Defendants' actions are willful and deliberate and are done under the color of law. These acts constitute a pattern, custom and practice in violation of plaintiff constitutional rights under 42 U.S.C. § 1983.

133.   As a result of the defendants' wrongful actions complained of herein, plaintiff has suffered severe damages in the form of humiliation, embarrassment, emotional distress, physical injury, as well as in money damages including but not limited to regular wages, overtime wages, retirement benefits, insurance benefits and pension.

134.   All of these damages have been exacerbated by the latest events surrounding plaintiff's most recent discrimination, retaliation, hostile environment, disparate treatment and termination.

## TWELFTH CLAIM FOR RELIEF

### (Discriminatory Discharge)

135.   Plaintiff repeats and realleges each and every allegation contained in paragraph 1 through 134 above with the same force and effect as if fully set forth herein.

136.   Defendants have unlawfully and intentionally discharged plaintiff based on her religion and religious appearance in violation of 42 U.S.C. §§ 2000-1(a)(1), Section 296 (1) of the State HRL, and Section 8-107 of the City HRL.

137.   As a result of the defendants' wrongful actions complained of herein, plaintiff has suffered severe damages in the form of humiliation, embarrassment, emotional

23

distress, physical injury, as well as in money damages including but not limited to regular wages, overtime wages, retirement benefits, insurance benefits and pension.

**PRAYER FOR RELIEF**

138.   WHEREFORE, plaintiff respectfully requests that this Court enter:

a)   A Declaratory Judgment declaring that the acts complained of herein violate the rights of plaintiff as guaranteed under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) *et seq*., New York State Executive Law, New York City Administrative Code, First Amendment to the Constitution of the United States, the Fourteenth Amendment to the Constitution of the United States, New York State Constitution Section 8 and 11;

b)   A judgment granting equitable relief directing defendants to cease and desist from exposing plaintiff to discrimination and retaliation and reinstating her to full status as a Bus Operator or Station Agent;

c)   A judgment directing defendants to reimburse and make plaintiff whole for any and all earnings she would have received but for defendants' discriminatory treatment and unlawful dismissal, including but not limited to, back pay and pension benefits;

d)   A judgment awarding plaintiff compensatory damages for mental anguish, loss of dignity, humiliation, and injury to livelihood in an amount that is fair, just, and reasonable, to be determined at trial, including reasonable attorneys' fees, as provided in 42 U.S.C. § 1988 and 42 U.S.C. § 2000e-5(k);

24

e)    A judgment awarding plaintiff double damages for plaintiff's intentional discrimination;

f)    A judgment awarding plaintiff front pay;

g)    A judgment awarding plaintiff punitive damages; and

h)    A judgment granting plaintiff such other and further relief as the Court deems appropriate.


## JURY TRIAL DEMAND

 Plaintiff hereby demands a trial by jury on all issues in this action that are so triable pursuant to 42 U.S.C. § 1981 and Title VII, civil Rights Act of 1991.


Dated New York, NY
September 26, 2005


_____/s/_____

Omar T. Mohammedi
Law Firm of Omar T. Mohammedi
200 Madison Avenue, Suite 1901
New York,  NY 10016
(212) 725-3846
Bar Code: OTM7234


25

# EXHIBIT 2

 **New York City Transit**

Flatbush Depot
4901 Fillmore Avenue
Brooklyn, NY 11234

January 21, 2004

Stephanie Lewis, #522846
947 Montgomery Street, Apt. 5F
Brooklyn, New York  11213

Certified Mail
**7099 3220 0004 1731 2440**
Return Receipt Requested
General Mail

Re:  60 Day Notification
      Section 71 of the
      Civil Service Law

Dear Ms. Lewis:

The Authority records indicate that you have been unable to perform the duties of your position
due to an injury/illness suffered on **October 27, 2003**

Accordingly, the Authority is reviewing your case in the appropriate case management committee
to assess your work status as it relates to consideration for restricted duty assignment,
reclassification, retirement, or termination.

If you continue in your current status, the Authority may seek termination of your employment
pursuant to the terms of the Collective Bargaining Agreement by which you are covered.  To avoid
jeopardizing your eligibility for a pension, you may consider filing an application for accidental and
ordinary disability retirement as soon as possible.

Should your medical condition change please notify the undersigned immediately.

Sincerely,

Elizabeth Currey
General Superintendent-Support Services
(347) 643-5708

c:  Union
     Worker's Compensation
     Restricted Duty                                               RDT-918

MTA New York City Transit is an agency of the Metropolitan Transportation Authority, State of New York
E. Virgil Conway, Chairman

S8-08-5512 12/97

NOV-24-2004 00:55 FROM:STAR PRINTING INC. 17187715731 TO:912127797976 P.8/15

370 Jay Street
Brooklyn, NY 11201

Lawrence G. Reuter
President

Flatbush Depot
4901 Fillmore Avenue
Brooklyn, NY 11234

 **New York City Transit**

August 18, 2004

Ms. Stephanie Lewis, #522846
947 Montgomery Street, Apt. 5F
Brooklyn, New York 11213

Certified Mail:
70993220000417316912
Return Receipt Requested
General Mail

Re: Intent to Terminate
    Section 71.
    10 Month Notification

Dear Ms. Lewis,

The Transit Authority's records indicate that, due to a claimed occupational injury sustained on **October 27, 2003** you have been unable to perform the full duties of your position. Your inability to perform your duties will have reached a period of ten (10) consecutive months on **August 22, 2004.**

You are hereby notified that, pursuant to Section 71 of the Civil Service Law, the Authority intends to terminate your employment effective **October 27, 2004.** You should be aware that as a Tier 4 employee you may be eligible for disability or service retirement benefits which may be affected by the termination. **In order to be considered for reclassification, you must put the request for reclassification in writing to the attention of the undersigned**

Contact your Union Representative or Employee Benefits if you have any questions in this regard.

**If your medical condition changes, you should contact the undersigned immediately in order to arrange for a return to work medical evaluation.**

Sincerely,

Elizabeth Currey
General Superintendent, Support Services
(347) 643-5708

cc: Union
    R. Marchetta
    Compensation Unit

MTA New York City Transit is an agency of the Metropolitan Transportation Authority, State of New York
E. Virgil Conway, Chairman

58-98-5512 12/97

 **New York City Transit**
Department of Buses



*BROOKLYN DIVISION*
*Flatbush Depot*
*4901 Fillmore Avenue*
*Brooklyn, NY 11234*

October 1, 2004
Certified Mail:
7003 2260 0004 4687 6702

STEPHANIE LEWIS
947 MONTGOMERY ST, APT: 5F
BKLYN, NY   11213

Dear Ms. Lewis:

You are scheduled for a reclassification medical on 10/8/04. You must report to the depot at 0800 to pick up a G-46 from the General Dispatcher and proceed to the location noted on the attached letter.

If you cannot make this appointment, you must contact me immediately.

Sincerely,

Elizabeth Currey
General Superintendent,
Support Services

Cc: TWU Chairperson

 **New York City Transit**

CERTIFIED MAIL:
70042890000313763092
RETURN RECEIPT REQUESTED

Stephanie D. Lewis   Pass # 522846
947 Montgomery Street
Brooklyn, New York 11213

Date: March 24, 2005

**Re:   Intent to Terminate**

Dear Ms. Lewis:

On or about August 18, 2004, you were notified that you were approaching a one
year cumulative absence resulting from a service connected illness/injury and that
Transit would consider your employment terminated effective October 27, 2004 under
§ 71of the Civil Service Law and/or the collective bargaining agreement and Transit's
Restricted Duty Policy/Instruction.

You were also informed that if you did not believe that you were able to return to work
in your Bus Operator title, you might be eligible for reclassification to another title.
You were further informed that you could request that Transit not consider your
employment terminated effective on the above date, but rather to participate in the
reclassification process.  On or about September 17, 2004 you requested a leave of
absence and completed a reclassification medical examination and were informed on
February 18, 2005 that you were found medically qualified for the Station Agent title.
On March 21, 2005 you were offered a budgeted Station Agent position but declined
it.

Accordingly, you are considered terminated effective March 21, 2005 with any right
to reinstatement determined by §71 of the NYS Civil Service Law and/or the relevant
Policy/Instruction.  Under those provisions, you may, not later than one year after the
termination of your disability, to the extent that you are able to perform the essential
duties of your position with or without a reasonable accommodation, make application
for a medical examination to permit consideration for reinstatement to your job.  If
certified to be physically and mentally fit to perform the duties of your former position,
with or without a reasonable accommodation, you will be reinstated to your former
position, if vacant, or to a vacancy in a similar position or a position in a lower grade
in the same occupational field, or to a vacant position for which you were eligible for
transfer.  If no appropriate vacancy exists to which reinstatement may be made, or if
the workload does not warrant the filling of such vacancy, your name will be placed
on a preferred list for your former position, and you shall be eligible for reinstatement
from such preferred list for a period of four years.  In the event that you are reinstated

to a position in a grade lower than that of your former position, your name will be placed on the preferred eligible list for your former position or any similar position.

You should be aware that as a Tier 4 employee, you may be eligible for disability or service retirement benefits that may be affected by this termination. Please contact your Union Representative or the New York City Employees Retirement System, at 335 Adams Street - Suite 2300, Brooklyn, New York, (347) 643-3000 for retirement procedures and application forms.

Sincerely,

Elizabeth Currey
General Superintendent, Support Services

cc:     Union
        Employee File
        General Mail (2)
        R. Marchetta
        Workers' Compensation


**New York City Transit**

SENT VIA DHL
CONFIRMATION #104455

Stephanie D. Lewis    Pass # 522846
947 Montgomery Street
Brooklyn 11213 N.Y.                          Date: March 29, 2005

**Re: ORDER TO REPORT FOR STATION AGENT TRAINING**

Dear Ms. Lewis:

The Transit Authority has been advised that you believe you were asked to leave the Station Agent Inductee training class on Monday March 21, 2005, for which you were scheduled. Subsequently you were terminated for declining the position by leaving the class.

Based on statements of the instructor, the Transit Authority believes that you were not asked to leave. However, there may have been a communication breakdown. The purpose of this letter is to inform you that you have been scheduled to complete your Station Agent Inductee Training. As such, you must report to 180 Livingston Plaza room 4041 on Monday April 4, 2005 at 08:00 Hrs.

Failure to appear for the training or refusing this position will terminate your employment effective March 29, 2005 under §71 of the Civil Service Law and/or the collective bargaining agreement and Transit's Restricted Duty Policy/Instruction.

Sincerely,

Elizabeth Currey,
G/S Support Services

CC:    Union
       Employee File
       AGM Carroll
       J. Johnsen, Law

 **New York City Transit**

CERTIFIED MAIL:

RETURN RECEIPT REQUESTED

Stephanie D. Lewis    Pass # 522846
947 Montgomery Street
Brooklyn, New York 11213                                    Date: June 14, 2005

**Re:    Notice of Termination**

Dear Ms. Lewis:

On or about August 18, 2004, you were sent an intent to terminate letter based on a
one year cumulative absence resulting from a service connected illness/injury that
occurred on October 27, 2003, pursuant to § 71 of the Civil Service Law and/or the
collective bargaining agreement and the Transit Authority's Restricted Duty
Policy/Instruction. In that letter you were provided the option of participating in the
Transit Authority's reclassification process to avoid termination of your employment
under the above provisions.

On or about September 17, 2004 you requested a leave of absence in order to
participate in the reclassification process. Subsequently you completed a
reclassification medical examination and were informed on February 18, 2005 that
you were found medically qualified for the Station Agent title. On March 21, 2005,
you were offered a budgeted Station Agent position. On April 29, 2005, your
reclassification to the title of Station Agent was rescinded based on your stated
unwillingness to comply with all the conditions of reclassification to that title.   On
June 6, 2005, as a result of a second reclassification medical examination, you were
found medically unqualified for reclassification to another title.

Accordingly, you are hereby notified that pursuant to § 71 of the Civil Service Law
and/or the collective bargaining agreement and the Transit Authority's Restricted
Duty Policy/Instruction, your employment has been terminated effective June 6, 2005.
You may, within one year of the termination of the disability/medical condition
that has prevented you from working in the Bus Operator title, to the extent you
are able to perform the essential duties of that title with or without a reasonable
accommodation, make application for a medical examination to seek
restoration of employment. If certified to be physically and mentally fit to
perform the duties of your former Bus Operator position, you will be reinstated
to your former position, if vacant, or to a vacancy in a similar position or a
position in a lower grade in the same occupational field. If no appropriate

vacancy exists to which such reinstatement may be made, or if the workload does not warrant the filling of such vacancy, your name will be placed on a preferred list for your former position and you will be eligible for reinstatement for a period of up to four years. In the event that you are reinstated to a position in a grade lower than that of your former position, your name will be placed on the preferred eligible list for your former position or any similar position.

Application for a medical examination for restoration of employment purposes must be made in writing, addressed to the Medical Director, New York City Transit Authority, 180 Livingston Street, Brooklyn, New York 11201 and must indicate when your disability/medical condition terminated or substantially improved and that since that date you are physically and mentally fit to perform the duties of your former position.

Sincerely,

*Elizabeth Currey*

Elizabeth Currey
General Superintendent, Support Services

cc:     Union
        Employee File
        General Mail (2)
        R. Marchetta
        Workers' Compensation